UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| I.G.S., <br>     Petitioner, <br><br> v. <br><br> MICHAEL NESSINGER, Warden of Wyatt Detention Facility, PATRICIA HYDE, Direct of ICE Boston Field Office; KRISTI NOEM, U.S. Secretary of Homeland Security, in their official capacities, <br>     Respondents. | C.A. No. 25-cv-339-MRD-PAS |

## ORDER GRANTING WRIT OF HABEAS CORPUS

Petitioner I.G.S. is in the midst of immigration proceedings where he is seeking asylum and other forms of relief from removal. He is currently detained by U.S. Immigration and Customs Enforcement ("ICE") and is in physical custody at the Wyatt Detention Facility. ECF No. 1 ¶¶ 1, 14. On July 10, 2025, an immigration court held a bond hearing and denied I.G.S.'s request for bond on the basis that I.G.S. presented a risk of flight. ECF No. 1 ¶¶ 17, 18; ECF No. 19-1. I.G.S. did not seek appellate review of this decision at the Board of Immigration Appeals, opting instead to file this now-ripe-for-decision Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. ECF No. 1. I.G.S. contends that the immigration court's July 10 bond hearing and the subsequent decision denying him bond violated his due process rights under the Fifth Amendment to the Unites States Constitution. Specifically, I.G.S argues that, based on the record presented to the court, the government failed to

establish by a preponderance of the evidence that I.G.S. posed a flight risk. ECF No. 1 ¶¶ 18, 27, 29; ECF No. 19 at 13. According to I.G.S., the immigration court 1) impermissibly relied on the government's unsubstantiated allegation that he was affiliated with MS-13,[1] 2) gave undue weight to an alleged misdemeanor domestic violence incident where I.G.S was the one of the complaining witnesses and the case was ultimately dismissed, and 3) made no inquiry of or reference to indications in the record that I.G.S. posed no risk of flight if he were released on bond. ECF No. 1 ¶ 18; ECF No. 19 at 13-16.

At a custody redetermination (or bond) hearing, the government has the burden to show by clear and convincing evidence that a detainee should continue to be detained because that individual is a danger to the community. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 40 (1st Cir. 2021). If the government cannot meet that burden, then the alternative is for the government to show by a preponderance of the evidence that the detainee, if released, will be a flight risk. *Id.* At first blush, I.G.S. appears to be asking this Court to serve as an appellate layer over the immigration court, which this Court clearly does not have the jurisdiction to do. However, a close review of the unofficial transcript from the July 10 hearing that I.G.S. submitted in support of his petition reveals that the immigration court had much more information about I.G.S. before it than the court acknowledged when it rendered its decision to deny bond. At the immigration court's invitation to "tell [it] about [I.G.S.]," I.G.S.'s

---

[1] At the March 13, 2023 bond hearing, the immigration court had concluded the unsubstantiated indication of I.G.S.'s affiliation with MS-13 did not meet the clear and convincing standard for dangerousness. ECF No. 17-1.

attorney detailed additional context about the domestic violence incident for which the police report had been written, including details from the letters submitted in support of I.G.S. describing his wife's abusive conduct toward him, and that I.G.S. went to the police station sua sponte to report the domestic violence incident. ECF No. 19-1 at 9-10. I.G.S.'s attorney also described his: consistent and unfailing attendance at check-ins with ICE after an immigration court had released him on bond in March 2023, his reliable appearance at all subsequent immigration court dates, his various applications filed in the court seeking relief from removal proceedings, his request to change his status to a form of lawful admission, and his consistent residency status in Rhode Island. *Id.* Not insignificantly, I.G.S.'s attorney offered that I.G.S. was prepared to testify about all of this under oath. *Id.* at 9. At the conclusion of I.G.S.'s attorney's response to the immigration court's invitation to tell it about I.G.S., the court made no additional inquiries and did not seek any testimony from I.G.S.

After the government's brief rebuttal – which touched solely on the alleged domestic violence incident and references to gang affiliation but in no way challenged or refuted any of I.G.S.'s previously mentioned mitigation proffers – the court proceeded to immediately deny the request for bond. Notably, the court did so without acknowledging any of the risk of flight mitigation factors summarized above. *Id.* at 11-12. The court explained its decision as follows: "there's a flight risk posed in [I.G.S.'s] case, and even taking everything into consideration, no amount of bond or conditions of release will assure this court that [he would] comply with all the

instructions of the court, including a final removal order, should that be the outcome of [his] case." *Id.* at 11.[2] The court noted that the "details and information" within the police report (though the charges had been dismissed), I.G.S.'s prior statements of affiliation with MS-13, database information indicating I.G.S. had been convicted of a controlled substance offense in his home country of El Salvador, and a Rhode Island citation for driving without a license, when considered together, indicated by a preponderance of the evidence that I.G.S. is "inclined to sort of violate the laws and . . . do what [he] need[s] to do and do what [he] want[s] to do in violation of the law." *Id.* at 11-12.

In this Court's view, the details from the evidence on which the immigration court relied to explain the reasoning for its conclusion speak more relevantly to whether I.G.S. presented a danger to the community as opposed to his potential for risk of flight. More importantly, I.G.S.'s attorney provided ample contextual detail from which the immigration court should have made further inquiry, or at the very least should have afforded I.G.S. the opportunity to testify so that his veracity and credibility could be explored by the court. While the preponderance of the evidence standard is certainly lower than the clear and convincing standard the court must apply to a determination of dangerousness, it is still a standard that must be met after a consideration of all relevant information presented during the bond hearing.

---

[2] The immigration court also concluded that the evidence (with specific reference to some letters submitted to the court in support of I.G.S.) fell short of showing I.G.S. is a danger to the community. ECF No. 19-1 at 12.

4

To decide a petition for writ of habeas corpus, 28 U.S.C. § 2243 instructs that "[t]he [district] court shall . . . dispose of the matter as law and justice require." While the Court acknowledges that there is a dearth of First Circuit and U.S. Supreme Court case law that speaks directly to the types of shortcomings noted in this bond hearing, justice requires that an individual's liberty not be continually constrained without explicit consideration and weighing of all the information presented that is relevant to the governing legal factors. To seemingly disregard relevant details that speak the heart of the matter − whether I.G.S poses a flight risk – does not pay sufficient due to a just process. After careful consideration of the parties' written and oral arguments in favor of and in opposition to[3] the pending petition, and in the interest of justice, the Court GRANTS I.G.S.'s petition for writ of habeas corpus.[4]

The Respondents are hereby ORDERED to immediately release I.G.S. from ICE physical custody in accordance with the following conditions:

(1)  I.G.S. shall be released from the physical custody of ICE as soon as practicable.

(2) ICE shall implement GPS monitoring.

---

[3] Respondents Patricia Hyde, Director of the ICE Boston Field Office, and Kristi Noem, U.S. Secretary of Homeland Security, oppose the pending petition. ECF No. 17. Respondent Michael Nessinger, Warden of the Wyatt Detention Facility, "takes no position in this matter." ECF No. 21.

[4] The Court considered each of the other arguments raised by both I.G.S. and the Respondents in their papers and during the oral arguments made on September 4 and concludes none of them have merit.

(3) ICE may conduct home visits either in person, by telephone, or by virtual video meeting during the period of release.

(4) I.G.S. shall comply with all directives from ICE, including appearing for all check-ins and immigration court proceedings.

ICE shall file a notice of compliance with this Order by Monday, September 15 at 12:00pm.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

9/12/2025